IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

v.                                          Case No.  24-cr-0049-jdp

STELIO KALKOUNOS,

DEFENDANT.

---

**BRIEF IN OPPOSITION TO MOTION TO DISMISS COUNT 1**

---

INTRODUCTION

On May 15, 2024, a grand jury returned an indictment charging Defendant with, among other things, recruiting, enticing, and obtaining Minor Victim 1 to engage in a commercial sex act in violation of 18 U.S.C. § 1591(a)(1). Indictment, Dkt. 2. More than a year and a half later, Defendant moved to dismiss that count because: (1) the statute does not apply to purchasers of consensual commercial sex where no third party was involved; (2) a contrary construction would violate Defendant's rights under the Due Process Clause of the Fifth Amendment; and (3) the Tenth Amendment bars the prosecution.[1] Motion to Dismiss Count 1, Dkt. 117; Omnibus Brief, Dkt. 118. Each of those arguments could have been raised by the original pretrial motion deadline, and Defendant has not demonstrated good cause for the Court to address them now.

---

[1] He also requested a hearing on a selective prosecution claim, which Magistrate Judge Boor denied. Jan. 26, 2026 Text Order, Dkt. 121.

Defendant's motion also fails on the merits. Section 1591(a)(1) has long applied to purchasers of commercial sex from minors, who are legally incapable of consent. In 2015, Congress added the words "patronize" and "solicit" to remove any doubt that those purchasers are subject to prosecution. Defendant is now charged with violating the sex trafficking statute by enticing, obtaining, patronizing, and soliciting Minor Victim 1 for commercial sex, and his argument about the absence of a third-party pimp misses the mark.

The other part of Defendant's argument—that Minor Victim 1 "put her own profile on the sugar daddy website and operated her own enterprise"—overlooks the very basic fact that she was a minor and the government need not show Defendant overcame her will. *See* Omnibus Brief at 20. Instead, the government needs to show only that Defendant enticed, obtained, patronized, or solicited her. Whether it can do so is not an appropriate issue for pretrial resolution. For these and other reasons, the Court should deny Defendant's motion.

## ARGUMENT

I.    Defendant Failed to Demonstrate Good Cause for Filing a New Motion to Dismiss After the Original Pretrial Motions Deadline

Approximately seven weeks before trial, one of Defendant's lawyers unexpectedly passed away. Def's Motion to Strike Trial Calendar, Dkt. 93. The Court struck the trial calendar and, after Defendant obtained new counsel, set a scheduling conference. Sept. 22, 2025 Text Order, Dkt. 104. Ahead of the conference, the government advised the Court that it believed "pretrial motions should be limited to

new issues raised by the second superseding indictment." Nov. 5, 2025 Letter to Court, Dkt. 112. That superseding indictment addressed the government's acquisition of TextNow messages between Defendant and Minor Victim 1, which were primarily relevant to count 2, production of child sex abuse material.

At the status conference, the Court reserved ruling on the permissible scope of pretrial motions. *See* Nov. 6, 2025 Text Order, Dkt. 114 ("Defendant may file new motions related to the operative superseding indictment . . . provided counsel has a good faith basis to do so, and the government may challenge any motion on the basis of it raising issues previously withdrawn or waived."). The Court later directed Defendant to supplement his briefing to address "the timeliness of the arguments raised in his new motion to dismiss and his approach to the Rule 412 order." Jan. 26, 2025 Text Order, Dkt. 121.

In his supplemental brief, Defendant argues he has good cause because of the change in his attorneys, the government's acquisition of the TextNow messages, and the superseding indictments. Def's Supp. Brief, Dkt. 123. Plus, Defendant says that unless the Court reaches the merits of his motion now, it "will create serious ineffective-assistance-of-counsel issues and waste judicial resources." *Id.* at 7. None of those arguments carry the day.

Standing alone, a change in counsel is not sufficient to demonstrate good cause. *See United States v. Suggs*, 703, Fed.Appx. 425, 428 (7th Cir. 2017); *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008). Defendant acknowledges as much, but states that this case is different because his previous attorney unexpectedly passed away. Def's Supp.

3

Brief at 10. While true, that argument overlooks the fact that the grounds for Defendant's new motion were available to predecessor counsel. Defendant says the "consensual" nature of Minor Victim 1's relationship with him "might've been debatable before, but it's not in light of the [TextNow] messages." Def's Supp. Brief at 6. But the "consensual" nature of the relationship was never a viable defense to the trafficking count. *See* Gov. Suppl. Resp. Rule 412 Evid. at 6-7. Even if it was, Defendant identified nothing in discovery to support his assertion that the consensual nature of the relationship was "debatable" before the acquisition of messages from TextNow.

Ineffective assistance of counsel can constitute good cause under Fed. R. Crim. P. 12(c)(3), but the moving party must demonstrate counsel's ineffectiveness. *See United States v. Johnson*, 47 F.4th 535, 540 (7th Cir. 2022) (affirming a district court's refusal to consider a late-filed motion to suppress). That requires showing: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's strategic decision not to file a motion "is insufficient to establish good cause." *Johnson*, 47 F.4th at 540. When the record is silent as to an attorney's reason for not taking a particular action, courts presume the attorney performed within professional standards. *Id.*

Defendant provides no information about why predecessor counsel did not move to dismiss the trafficking charge on the grounds he now asserts. As Defendant notes, current counsel cannot consult with predecessor counsel, given her passing. Def's Supp. Br. at 5. That does not mean, however, Defendant cannot create a record of her decision making during her representation. Defendant could have reviewed her file,

4

submitted an affidavit, and/or consulted with one of the three other attorneys who represented him during that time. *See* Christopher Donovan Notice of Appearance, Dkt. 5; Martin Pruhs Notice of Appearance, Dkt. 12; Sam Amirante Notice of Appearance, Dkt. 57. He did not, perhaps because he "doesn't think she erred." Def's Supp. Brief at 11.

Defendant also has not and cannot demonstrate prejudice. Defendant's new arguments lack merit, are inconsistent with the language of the section 1591(a)(1), and have been rejected by courts that have considered them. That leaves Defendant's argument that the Court should consider his arguments now for the sake of judicial economy. *See* Def's Supp. Br. at 11-12. Entertaining motions that are likely to fail does not serve the interest of judicial economy and "staving off future post-conviction proceedings is too speculative" to constitute good cause, particularly when the late motion is likely to fail. *United States v. Webb*, No. 23-cr-42, 2024 U.S. Dist. LEXIS 86218, at *6-7 (W.D. Pa. May 13, 2024); *see also* Omnibus Brief at 16 n.50 (acknowledging that "four circuits have rejected *Bond* arguments that may seem similar at first glance").

If the Court does reach the merits of Defendant's new motion, it should be denied for the reasons explained in the remainder of this brief.

I.      Section 1591 Criminalizes Commercial Sex with a Minor, Including When No Third-Party Is Involved

Section 1591(a)(1) provides in relevant part as follows:

(a) Whoever knowingly—

> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;
>
>             \*       \*      \*
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact . . . that the person has not attained the age of 18 years[2] and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

Nothing in the text of the statute requires the involvement of a third party, *i.e.*, a pimp, as Defendant argues. *See* Def's Supp. Brief at 6 (arguing Minor Victim 1 wasn't trafficked because the TextNow messages "show that the relationship was consensual and didn't involve a third party"); Omnibus Brief at 7 (arguing "the sex trafficking statute is usually applied to pimps"), 12 (arguing that Defendant "can't be made into a trafficker simply because he was a john"), 16 (characterizing the conduct in this case as "mere prostitution"). The caselaw likewise supports no such requirement.

In *United States v. Jungers*, 702 F.3d 1066 (8th Cir. 2013), the Eighth Circuit reviewed orders of a district court that granted judgments of acquittal to two "johns" charged with violating section 1591(a). Like Kalkounos, those defendants argued the statute did not apply to purchasers of commercial sex acts. Reversing the district court, the Eighth Circuit explained that "Section 1591(a)(1) makes no distinction between suppliers or purchasers of commercial sex acts with children—it prohibits acts of trafficking regardless of the identity or status of the trafficker." *Id.* at 1071.

---

[2] In a prosecution under subsection (a)(1)—such as the present case— the government need *not* prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years if the defendant had a reasonable opportunity to observe the person. 18 U.S.C. § 1591(c).

In 2015, Congress passed the Justice for Victims of Trafficking Act, which added the words "patronize" and "solicit" to section 1591(a)(1). Public Law 114-22, Title I, § 108(a). Those additions were meant to codify *Jungers* and clarify Congress's intent that the statute "criminalize[] those who purchase sexual acts from human trafficking victims." Justice for Victims of Trafficking Act of 2015 Report, January 27, 2015 (House Committee on the Judiciary). While considering the legislation, one representative further described its purpose as follows:

> Madam Speaker, for too long those who patronize child prostitutes have been overlooked. H.R. 3530 encourages law enforcement to target and punish persons who purchase [il]licit sexual activities from trafficking victims not as petty criminals but as serious offenders, the serious offenders that they are.

House consideration of H.R. 3530, May 20, 2014 (Congressional Record).

In short, the statute plainly applies to purchasers of commercial sex from minors. Arguing that it doesn't, Defendant relies on *Fierro*, which held "the entire language and design of the statute as a whole indicates that it is meant to punish those who are the providers or pimps of children, not the purchasers or the johns." Omnibus Brief at 11 (quoting *Fierro v. Taylor*, 11-cv-8573, 2012 WL 13042630 at *3 (S.D.N.Y. July 2, 2012)). *Fierro*, however, predated the Justice for Victims of Trafficking Act and interpreted a version of section 1591(a) that didn't include the words "patronize" or "solicit." Further, *Fierro* adopted the reasoning of *United States v. Bonestroo*, No. 11-cr-40016, 2012 WL 13704 (D.S.D. Jan. 4, 2012), which the Eighth Circuit overruled in *Jungers*. *Fierro* is of no value to the present case.

7

With that background out of the way, the government turns to Defendant's related point: to convict him of violating section 1591(a), the government must prove Minor Victim 1 was trafficked by *someone*. Omnibus Brief at 3. The government can't do it, according to Defendant, because Minor Victim 1 "conducted, managed, and organized her own affairs." *Id.* As explained in the next section, that argument is procedurally improper and based on too narrow a reading of the statute.

II.    Section 1591(a) Does Not Require the Government to Prove Force, Fraud or Coercion When the Victim is a Minor, or that Defendant Overcame the Victim's Will

When it passed the Trafficking Victims Protection Act of 2000, Congress was concerned with two distinct and "severe forms of trafficking in persons": (1) sex trafficking where the victim is under 18 years of age; and (2) sex trafficking in which the act is induced by force, fraud, or coercion. Pub.L. No. 106–386, 114 Stat. 1464, 1466, 1470 (2000). Force, fraud, or coercion is not required when the charged offense involves a minor. *United States v. Williams*, 127 F.4th 676, 686 (7th Cir. 2025); *United States v. Young*, 955 F.3d 608, 615 (7th Cir. 2020). The Court can therefore easily reject Defendant's assertion that count 1 is defective because "[n]o one forced her" to engage in commercial sex. Omnibus Brief at 4; *see also* Def's Supp. Brief at 8 ("Doe wasn't trafficked—by Kalkounos or anyone else. No one forced her to do anything.").

Defendant's interpretation of the other verbs, such as "entice" and "obtain" is also flawed. Throughout his brief, Defendant argues that Minor Victim 1 would have engaged in commercial sex regardless of his involvement with her, and therefore he could not have "enticed" or "obtained" her. But the verbs in section 1591(a) are not so

8

limited. "Entice" means "the perpetrator attracts the victim by offering something that arouses hope or desire." *Ardolf v. Weber*, 332 F.R.D. 467, 474 (S.D.N.Y. 2019) (citing Merriam-Webster Online Dictionary). "Obtain" is "an incredibly broad verb" meaning "[t]o get hold of by effort; to get possession of; to procure; to acquire, in any way." *Jungers*, 702 F.3d at 1071 (quotation marks and further citation omitted). In short, "[t]he ordinary and natural meaning of 'obtains' and the other terms Congress selected in drafting § 1591 are broad enough to encompass the actions of both suppliers and purchasers of commercial sex acts." *Id.*

As explained in the next section, the Court cannot determine whether there is sufficient evidence to convict Defendant of enticing, obtaining, patronizing, or soliciting Minor Victim 1 at this stage of the case.

III.    The Court Cannot Resolve Defendant's Motion Without a Trial on the Merits

Federal Rule of Criminal Procedure 12 allows the district court to resolve before trial only those motions "that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The rule permits pre-trial adjudication of a defense only "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."[3] *United States v. Covington*, 395 U.S. 57, 60 (1969). "If the pretrial claim is substantially intertwined with the evidence

---

[3] In *Covington*, the Supreme Court interpreted an earlier version of Rule 12 that stated: "Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." In 2014, the rule changed to its current, less archaic form. No change in meaning was intended. Fed. R. Crim. P. 12, Committee Notes on Rules - 2014 Amendment.

concerning the alleged offense," it is not appropriate for pretrial resolution. *United States v. Yasak*, 884 F.2d 996, 1001 n.3 (7th Cir. 1989).

Defendant's motion to dismiss count 1 rests on a narrow slice of unproven facts. At trial, the government intends to show that Defendant enticed, obtained, patronized, and solicited Minor Victim 1 for commercial sex. Among other evidence, the government will present testimony and financial records showing Defendant offered gifts and cash to Minor Victim 1 in exchange for sex, and followed through with those offers. A jury needs to decide whether this evidence is sufficient to convict Defendant of count 1. Granting Defendant's motion would not only trespass on the jury's territory, but it would require a mini-trial on the defense, "only to repeat the exercise with largely the same evidence a short time later at the trial itself." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010).

IV.    Applying Section 1591(a)(1) to Defendant Will Not Violate His Due Process Rights

The Due Process Clause of the Fifth Amendment protects against the "unforeseeable and retroactive judicial expansion" of clear statutory language. *Bouie v. City of Columbia*, 378 U.S. 347, 352, (1964) (holding that South Carolina's application of a trespassing statute to demonstrators violated their due process rights because the complaining department store did not give the demonstrators notice that they could not sit at the lunch counter). As explained above, section 1591(a)(1) covers a defendant who "patronizes" or "solicits" a minor for commercial sex. Defendant's argument to the

contrary ignores not only the complete set of verbs in the statute, but also evidence that Defendant *did* offer Minor Victim 1 gifts and cash so that she would have sex with him.

Defendant is wrong that this is a "novel application" of the sex trafficking statute. Omnibus Brief at 13. In *United States v. Taylor*, the Ninth Circuit affirmed the sex trafficking conviction of a defendant who, like Kalkounos, met a minor victim on a sugar daddy website and had sex with her in exchange for money, a cellphone, and clothes. No. 22-50028, 2024 WL 1108829, at *1 (9th Cir. Mar. 14, 2024). Other prosecutions of the same type are plentiful. *See*, *e.g.*, *United States v. Roberts*, No. 20-cr-20063, Dkt. 58 at 14 (E.D. Mich. May 26, 2022) (explaining in an order denying a motion to withdraw a guilty plea, that "[t]here simply is no additional element requiring a third-party to be involved with the commercial sex act with a minor"); *United States v. Owens*, No. 23-cr-145, 2025 WL 221806, at *1 (S.D.W. Va. Jan. 16, 2025) (another prosecution in which the defendant communicated with the minor on a sugar daddy website); *United States v. Tollefson*, 367 F. Supp. 3d 865, 868 (E.D. Wis. 2019) (similar); *United States v. Quinones*, No. 23-cr-20, Dkt. 47 at 2-3 (W.D.N.Y. Nov. 30, 2023) (government trial brief in a case in which defendant was convicted of violating section 1591(a) by paying a minor relative for sex). It was therefore entirely foreseeable to Defendant that his alleged conduct violated the law.

Defendant's further suggestion that his due process rights were violated unless he was aware of the statute he is accused of violating and its penalties also lacks merit. *See* Omnibus Brief at 113 (arguing that "neither Kalkounos nor any person reading § 1591 would know that simply engaging in a commercial sex act opens them up to a ten-

year mandatory minimum sentence"). "Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so." *United States v. Roberts*, No. 07-cr-70031, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007). "Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation." *Id.* The same goes for those who purchase sex—an activity Defendant acknowledges has been "comprehensively regulated." Omnibus Brief at 14.

V.     Defendant's Tenth Amendment Argument Fails

In *Bond v. United States*, 572 U.S. 844 (2014), the Supreme Court considered whether the Chemical Weapons Convention Implementation Act's prohibition on possessing and using a chemical weapon applied to "an amateur attempt by a jilted wife to injure her husband's lover, which ended up causing only a minor thumb burn readily treated by rinsing with water." *Id.* at 848. Congress passed the law at issue pursuant to its power to make treaties. *Id.* at 855. Specifically, the United States ratified a convention that sought "to expand the prohibition on chemical weapons beyond state actors in wartime," and Congress passed the Chemical Weapons Convention Implementation Act to implement the convention. *Id.* at 849. Given the "context from which the statute arose—a treaty about chemical warfare and terrorism" the court declined to apply the statute to defendant's conduct without a "clear indication that Congress meant to reach purely local crimes." *Id.* at 860.

12

Congress did not enact the Trafficking Victims Protection Act pursuant to its treaty power; it did so pursuant to the Commerce Clause. *United States v. Adams*, 132 F.4th 259, 265 (3d Cir. 2025); *United States v. Walls*, 784 F.3d 543, 546 (9th Cir. 2015). "Section 1591 is a valid exercise of that [Commerce Clause] power." *Adams*, 132 F.4th. at 265. "Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce" and courts have refused to say that finding is irrational. *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007); *accord* 22 U.S.C. § 7101(b)(12).

Defendant's argument that the government "violated Wisconsin's sovereignty" by charging him with an offense that took place in Wisconsin fares no better. In *Wearing*, the Seventh Circuit explained that "trafficking happens, one victim at a time, at the domestic level just as it does internationally." *United States v. Wearing*, 865 F.3d 553, 557 (7th Cir. 2017). "There is no reason why Wisconsin and the federal government could not both have addressed this problem: overlapping state and federal laws are nothing new." *Id.* at 558.

CONCLUSION

For these reasons, the Court should deny Defendant's motion to dismiss count 1.

Dated: February 27, 2026.

CHADWICK M. ELGERSMA
United States Attorney
By:      /s/
TAYLOR L. KRAUS
MEGAN STELLJES
JULIE PFLUGER
Assistant United States Attorneys

13