IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

v. Case No. 24-cr-0049-jdp

STELIO KALKOUNOS,

DEFENDANT.

---

# GOVERNMENT SENTENCING MEMO

---

## INTRODUCTION

Defendant exploited and coerced underage girls into sexual activity using money, gifts, and persistent pressure after meeting them online. Although he pled guilty to a single count of receiving child sex abuse material (CSAM), his admitted conduct goes far beyond online exploitation and includes in-person sexual abuse of these vulnerable girls. For the reasons explained below, which include the seriousness of the offense, Defendant's status as a repeat offender, Defendant's continued efforts to justify parts of his crime, and the need to protect the public, the Court should impose a sentence of 20 years' imprisonment.

## BACKGROUND

In 2023, Minor A met Defendant on a sugar daddy website. Within hours of meeting, Minor A told Defendant she was a minor. (She said she was 17; her true age was 16.) Undeterred, Defendant pursued a sexual relationship with Minor A. Over the course of many months, Defendant sent Minor A money and gifts in exchange for

explicit images. He received, produced, and attempted to produce multiple images and videos of CSAM. He also met with Minor A at hotels for sex on five occasions. He not only paid her for sex but also arranged for Uber to transport her to the hotels.

Defendant engaged in similar behavior with Minor B, the victim from the Eastern District of Wisconsin. After meeting her on a "seeking arrangement" website, Defendant asked Minor B for "sex, money, prostitution." She was 16 years old at the time. Battling a drug addiction, Minor B needed money and agreed. Defendant arranged a hotel room and sent a rideshare service to pick her up.

Defendant pleaded guilty to Count 4 of the Fourth Superseding Indictment, which charges receipt of CSAM with respect to Minor A. He also stipulated to the rest of the conduct charged in the operative indictment. Plea Agreement, ¶ 5, Dkt. 148. He also does not dispute the core of the conduct with Minor B, as described in the presentence report. If the Court accepts the plea agreement, it must sentence Defendant to between 15 and 20 years' imprisonment.

ARGUMENT

I. Nature, Circumstances, and Seriousness of the Offense

Defendant's criminal conduct was egregious. While Defendant did not physically force Minor A to send explicit images or to have sex, her participation in these activities was not voluntary in a meaningful sense. Minor A was a troubled teenager, while Defendant was a 50-year-old man with substantial financial resources. During the

five months he pursued her, Defendant violated every boundary Minor A tried to draw:

- She did not want to tell him her real name; he insisted (while never sharing his);
- She wanted to only kiss and touch during their first encounter; they had sex;
- He wanted to ejaculate inside her; she said no. He insisted and got his way.

Minor A explained that Defendant vacillated between being angry and critical with her and invoking pity by telling her he "just wanted to be loved." This made Minor A feel ashamed and led her to reassure Defendant that she would never leave him. Looking back, Minor A now recognizes this behavior as manipulation. At 16 years old she did not.

Defendant used the same tactics with Minor B. On some occasions, like when Minor B was hospitalized, Defendant would offer to see her without the expectation of sex. These offers were never earnest, and Defendant always got what he was really after—sex. While Defendant claimed he was generous—sending money with messages like "more gifts"—his payments were not acts of generosity; they were tools of control. He would pair his "generosity" with emotionally manipulative messages like, "YOU WANT ME GONE?? FOR GOOD???," and "Stop hurting me & breaking promises." His financial support, guilt-laden messages, and persistent pressure kept vulnerable minors dependent on him and unable to resist his demands. In retrospect, Minor B was able to see Defendant's behavior as "sickening," explaining she was just a girl and "he knew that."

II. Defendant's Criminal History

In 2006, Defendant met an undercover officer posing as a 14-year-old girl in an internet chatroom. Defendant described the sexual things he wanted to do to her, repeatedly asked if she was really 14 years old, and said he could go to jail for what he was doing. After arranging to meet up for sex, Defendant drove from his home in Illinois to Wisconsin. Law enforcement intercepted Defendant and recovered condoms and a hotel key. Defendant admitted he wanted to have sex with the undercover officer. Defendant was federally convicted of travelling with intent to engage in illicit sexual conduct with a minor and sentenced to 46 months' imprisonment and 10 years' supervised release. In 2018, the United States District Court for the Eastern District of Wisconsin terminated his supervised release two years early.

III. Characteristics of Defendant

While Defendant expressed remorse for the offense in a written allocution, he seems to believe there were positive aspects of his relationship with Minor A. Through counsel, he asked the probation office to clarify that he not only paid Minor A for CSAM, but he "also gave Minor A money because Minor A asked for money or needed support for her various needs. The defendant believes that nearly half of the payments the defendant made to Minor A are not attached to photos or videos." RPSR ¶ 23, *see also* RPSR ¶ 22. There is a lot wrong with this view.

What Defendant characterizes as "support" was enticement. Defendant sent Minor A (and other victims) cash and gifts so they would engage with him and eventually have sex with him and send him explicit photos and videos. To portray some

of Defendant's payments to Minor A as innocent or even helpful shows a lack of insight on Defendant's part.

To put it more bluntly, Minor A was under the age of 18 for the duration of her relationship with Defendant. He knew it within hours of meeting her and he continued to pursue her anyway. Defendant says he came to "firmly believe she was 18" in late 2023, but that ignores Minor A's uncontradicted statement that she showed Defendant her learner's permit during the second hotel stay. It likewise ignores circumstantial evidence of her age, including discussions Minor A had with Defendant about her high school, her homecoming dress, her driving lessons, parental monitoring of her devices, and her need to have a sponsor for her Cash App account. Bottom line, she was a minor, Defendant knew she was a minor, and the relationship was illegal for its entire duration. There was nothing good about it.

IV. Respect for the Law, Just Punishment, and Public Protection

To promote respect for the law and justly punish Defendant, the Court should impose a lengthy prison term. Defendant's prior federal sentence of about four years did not deter him from engaging in the same criminal conduct all over again, this time with real minors instead of an undercover officer. Twenty years is much longer than four, but it is not greater than necessary to achieve the aims of sentencing. This is because as long as Defendant is out of custody, he will likely remain a danger to the community.

At the time of the instant offense, Defendant had ample resources to control the compulsive behavior that (in his view) led to his crime. He had a supportive family,

plenty of money, access to therapy, and belonged to an addiction recovery community. Yet he reoffended.[1] It is unclear that Defendant would not repeat the same mistake upon release. To protect minors from Defendant going forward, the Court should impose the maximum term of imprisonment allowed by the parties' plea agreement.

## CONCLUSION

For these reasons, the Court should sentence Defendant to 20 years' imprisonment. It should also impose the following financial penalties: (1) a $100 mandatory criminal assessment, 18 U.S.C. § 3013; (2) a $5,000 assessment, 18 U.S.C. § 3014; and (3) a $35,000 assessment, 18 U.S.C. § 2259A(a)(2).

Dated: September 3, 2026

CHADWICK M. ELGERSMA
United States Attorney

By: /s/
MEGAN STELLJES
JULIE PFLUGER
Assistant United States Attorneys

[1] Defendant also reported engaging with a therapist in 2006, claiming he called a therapist hoping the therapist would talk him out of having sex with a 14-year-old. It did not work.